**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

Timothy L. Silver,

   Plaintiff,

v.

Michael J. Astrue,
Commissioner of Social Security,

   Defendant.

No. CV-12-00540-PHX-DGC

**ORDER**

Plaintiff filed an application for disability insurance benefits on October 29, 2007, claiming to have been disabled as of November 20, 2005. Tr. at 25. Plaintiff's application was denied on July 2, 2008, and, after reconsideration, on November 28, 2008. *Id.* Plaintiff was granted a hearing in which he appeared, with counsel, before Administrative Law Judge ("ALJ") James E. Seiler on September 8, 2010. *Id.* The ALJ determined that Plaintiff was not disabled under the relevant provisions of the Social Security Act. *Id.* The Appeals Council denied review on January 12, 2012 (*id.* at 1-6), and Plaintiff filed this action seeking reversal of the denial and remand for an award of benefits. Doc. 16. Defendant has filed a memorandum in opposition (Doc. 17), and Plaintiff has filed a reply. Doc. 18. Neither party has requested oral argument. For the reasons that follow, the Court will vacate Defendant's decision and remand for an award of benefits.

**I.  Standard of Review.**

Defendant's decision to deny benefits will be vacated "only if it is not supported by substantial evidence or is based on legal error." *Robbins v. Soc. Sec. Admin.*, 466 F.3d

880, 882 (9th Cir. 2006). "'Substantial evidence' means more than a mere scintilla, but less than a preponderance, i.e., such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* In determining whether the decision is supported by substantial evidence, the Court must consider the record as a whole, weighing both the evidence that supports the decision and the evidence that detracts from it. *Reddick v. Charter*, 157 F.3d 715, 720 (9th Cir. 1998). If there is sufficient evidence to support the Commissioner's determination, the Court cannot substitute its own determination. *See Young v. Sullivan*, 911 F.2d 180, 184 (9th Cir. 1990).

**III. Analysis.**

For purposes of Social Security benefits determinations, a disability is

> the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

20 C.F.R. § 404.1505.

Determining whether a claimant is disabled involves a sequential five-step evaluation process. The claimant must show (1) he is not currently engaged in substantial gainful employment, (2) he has a severe physical or mental impairment, and (3) the impairment meets or equals a listed impairment or (4) his residual functional capacity ("RFC") precludes him from performing his past work.[1] If at any step the Commission determines that a claimant is or is not disabled, the analysis ends; otherwise, it proceeds to the next step. If the claimant establishes his burden through step four, the Commissioner must find the claimant disabled unless he finds that the claimant can make an adjustment to other work. The Commissioner bears the burden at step five of showing that the claimant has the RFC to perform other work that exists in substantial numbers in the national economy. *See* 20 C.F.R. § 404.1520(a)(4)(i)-(v).

---

[1] RFC is the most a claimant can do with the limitations caused by his impairments. *See Rodriguez v. Bowen*, 876 F.2d 759, 762 (9th Cir. 1989); 20 C.F.R. § 416.945(a); SSR 96-8p, 1996 WL 374184 (July 2, 1996).

- 2 -

1  The ALJ found at step one that Plaintiff had not worked since his alleged onset of
2  disability on November 20, 2005, through the date he was last insured of December 31,
3  2009.  Tr. at 27.  At step two, the ALJ found that Plaintiff suffered from the following
4  severe impairments:  viral encephalitis, fibromyalgia, headaches, an adjustment disorder
5  with depressed mood, and a cognitive disorder.  *Id.*  The ALJ found at step three that
6  none of these impairments or combination thereof met or medically equaled one of the
7  listed impairments.  *Id.*  The ALJ found that Plaintiff had the RFC to perform light work
8  with moderate limitations in performing sustained attention and concentration.  Tr. at 28.
9  The ALJ found at step four that Plaintiff would not be able to perform his past relevant
10 work in software due to his mental limitations.  *Id.* at 34.  The ALJ found at step five that
11 Plaintiff was capable of adjusting to other work that existed in significant numbers in the
12 economy. *Id.* at 35.  The ALJ therefore concluded that Plaintiff was not disabled.  *Id.*

13 Plaintiff argues that the ALJ's determination was based on legal error because he
14 failed properly to weigh Plaintiff's subjective testimony and the third-party testimony of
15 Plaintiff's mother and failed properly to weigh medical and opinion evidence.

16 **A.  Plaintiffs' Subjective Testimony.**

17 Plaintiff testified that he suffered a brain injury due to viral encephalitis in 2000.
18 Tr. at 47, 53.  He previously had an IQ in the 180's and a photographic memory.  *Id.* at
19 46-47.  Prior to his illness, he was an entrepreneur for several start-up companies and
20 worked for a software company that developed and implemented artificial intelligence.
21 *Id.* at 46.  After his illness, Plaintiff could no longer do computer programing work, and
22 from 2000 until 2005, he worked for indeterminate periods as a retail clerk for several
23 stores, including Game Crazy (part-time) and Home Depot.  *Id.* at 56-58.  Plaintiff
24 testified to a variety of symptoms resulting from his brain injury, depression, and
25 fibromyalgia, including that he can no longer process math or logic; he has difficulty
26 transferring short term memory to long-term memory; he forgets dates, such as his kids'
27 birthdays; he drives occasionally but gets lost or doesn't know where his is; he has
28 feelings of worthlessness and suicidal thoughts; he can't keep a regular schedule or

remember to take his medicines; he has migraines lasting up to a couple of days about three times a month; he has "bad brain days" when he can't function enough to pull thoughts together; he gets mentally exhausted, suffers fatigue, and has to take naps most days and spend time alone in his room in the dark due to migraines and overstimulation if he spends time with people. *Id.* at 47-53. Plaintiff lives with his retired parents, and he testified that he relies on them for help with daily activities such as dressing, getting to doctor's appointments, and remembering to take his medications. *Id.* at 51-52. He described his parents as having to "rais[e] an adult child again." *Id.* at 52.

The ALJ concluded that Plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms were "not credible to the extent they are inconsistent with the above residual functional capacity assessment." Tr. at 33. In reaching this conclusion, the ALJ evaluated Plaintiff's testimony using the two-step analysis established by the Ninth Circuit. *See Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996). Applying the test of *Cotton v. Bowen*, 799 F.2d 1403 (9th Cir. 1986), the ALJ first determined that Plaintiff's impairments could reasonably produce the symptoms alleged. Tr. at 33. Given this conclusion, and because there is no evidence of malingering, the ALJ was required to present "specific, clear and convincing reasons" for finding Plaintiff not entirely credible. *Smolen*, 80 F.3d at 1281.[2] Plaintiff argues that the

---

[2] Defendant argues that the clear and convincing standard does not apply on the basis of the Ninth Circuit's en banc decision in *Bunnell v. Sullivan*, 947 F.2d 341, 345-46 (9th Cir. 1991), in which the Court of Appeals stated that to discredit a claimant's subjective complaints the ALJ must make findings "properly supported by the record" that are "sufficiently specific to allow a reviewing court to conclude the adjudicator rejected the claimant's testimony on permissible grounds." Doc. 17 at 14. Defendant argues that subsequent cases that have articulated a "clear and convincing" standard are not binding because only an en banc panel can overrule *Bunnell*. *Id.* at 13. The Court finds this argument unpersuasive. Subsequent cases have explained that an ALJ "may only find an applicant not credible by making specific findings as to credibility *and* stating clear and convincing reasons for each." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006) (emphasis added); *see also Lingenfelter*, 504 F.3d at 1036. Thus, the cases applying the "clear and convincing" standard in no way contradict or overturn *Bunnell*. Furthermore, numerous cases have applied the "clear and convincing" standard, and this Court is in no position to disregard them. *See, e.g.*, *Taylor v. Comm'r of Soc. Sec. Admin.*, 659 F.3d 1228, 1234 (9th Cir. 2011); *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009); *Lingenfelter*, 504 F.3d at 1036; *Orn*, 495 F.3d at 635; *Robbins*, 466 F.3d at 883; *Smolen*, 80 F.3d at 1281; *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993).

ALJ failed to meet this burden. Doc. 13 at 18. The Court agrees.

General assertions that the claimant's testimony is not credible are insufficient. *See Parra v. Astrue,* 481 F.3d 742, 750 (9th Cir.2007). The ALJ must identify "what testimony is not credible and what evidence undermines the claimant's complaints." *Id.* (quoting *Lester,* 81 F.3d at 834). In weighing a claimant's credibility, the ALJ may consider some of the following factors: claimant's reputation for truthfulness, inconsistencies either in claimant's testimony or between his testimony and his conduct, unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment, claimant's daily activities, claimant's work record, and the compatibility of claimant's testimony with the medical evidence. *Thomas*, 278 F.3d at 958-59; *Lee v. Astrue*, 472 Fed. Appx. 553, 555 (9th Cir. 2012)

Although the ALJ's opinion contains a detailed reiteration of numerous reports and opinions in the record, the ALJ makes no attempt to integrate his lengthy recapitulation of the evidence with an analysis of what does or does not support Plaintiff's testimony.[3] Moreover, the ALJ's bare assertion that he found Plaintiff's testimony about the severity of his symptoms not credible because it was inconsistent with the RFC not only fails to satisfy the requirement that the ALJ's reasons be "specific, clear, and convincing," but it rests on faulty reasoning. The ALJ cannot determine the RFC and only then consider Plaintiff's testimony – the RFC must incorporate that testimony. *See* 20 CFR § 416.945(a)(1)&(3). Courts have routinely rejected this kind of circular approach. *See Leitheiser v. Astrue,* No. CV 10-6243-SI, 2012 WL 967647 at *9 (D. Or. March 16, 2012) ("Dismissing a claimant's credibility because it is inconsistent

---

[3] Defendant points to individual pieces of evidence contained within the ALJ's six page summary of the record that it argues properly discount Plaintiff's testimony (Doc. 17 at 15-18), but to the extent that the ALJ believed specific facts and medical opinions supported his negative credibility determination, he was required to say so and not leave the Court to guess at his reasoning. *See Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1225 (9th Cir. 2009) ("Long-standing principles of administrative law require us to review the ALJ's decision based on the reasoning and factual findings offered by the ALJ – not *post hoc* rationalizations that attempt to intuit what the adjudicator may have been thinking.")

with a conclusion that must itself address the claimant's credibility is circular reasoning and is not sustained by this court."); *Vasquez v. Astrue*, CV11-2406-PHX-GMS, 2012 WL 491977 at *8 (D. Ariz. Feb 8, 2013) (citing *Leitheiser*); *Carlson v. Astrue,* 682 F.Supp.2d 1156, 1167 (D.Or.2010) (accord).  The Court finds that the ALJ's rejection of Plaintiff's symptom testimony without proper explanation or analysis was legal error.

### B.     Third-Party Testimony.

Plaintiff's mother, Roberta Silver, submitted a report in which she commented on her son's daily activities and functioning.  Tr. at 141-48.  Ms. Silver noted that her son helps her around the house with walking and lifting heavy things, and he plays computer games.  *Id.* at 142, 145.  Among his limitations, Ms. Silver noted that her son forgets to change his clothes, bathe, shave, or comb his hair.  *Id.* at 142.  He needs to use lists and timers to remind him to take care of personal grooming and take his medicines, but these do not always work because he forgets what the reminders are for.  *Id.* at 143.  Before his injury, he was very active and social, but he now forgets family and friends; needs to see pictures to remember his daughters; is afraid to go outside; and can no longer drive except in an emergency because he gets lost.  *Id.* at 141, 144, 146.  Ms. Silver noted that when her son has a "bad brain day" he reverts to about 3 years old, has terrible headaches, and is unable to connect ideas or complete his sentences.  *Id.* at 148.

As with Plaintiff's testimony, the ALJ recounts Ms. Silver's testimony in detail, but merely concludes that her statements are "not consistent with the record."  Tr. at 34. Social Security regulations recognize that "other sources," including family, neighbors, and friends, may have special knowledge of an individual and can provide insight into his impairments and ability to function.  20 C.F.R. § 404.1545(a)(3); SSR 06–03p, 2006 WL 2329939, at *2 (Aug. 9, 2006).  Consequently, "[i]f the ALJ wishes to discount the testimony of [a] lay witness [ ], he must give reasons that are germane to [that] witness." *Dodrill v. Shalala,* 12 F.3d 915, 919 (9th Cir.1993).  The ALJ's summary statement that he finds Ms. Silver's statements "inconsistent with the record" fails to meet this standard.

### C. Medical and Other Opinion Evidence.

"The ALJ must consider all medical opinion evidence." *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008); *see* 20 C.F.R. § 404.1527(c); SSR 96-5p, 1996 WL 374183, at *2 (July 2, 1996). The ALJ may reject the opinion of a treating or examining physician by making "'findings setting forth specific legitimate reasons for doing so that are based on substantial evidence in the record.'" *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002) (citation omitted). "The ALJ can 'meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Id.* "The opinions of non-treating or non-examining physicians may also serve as substantial evidence when the opinions are consistent with independent clinical findings or other evidence in the record." *Id.* Further, "[t]he ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Id.*

Plaintiff argues that the ALJ failed to consider the opinions offered by various treating physicians, including Drs. Dongmei Lui, M.D. and Roland V. Feltner, M.D., and neuropsychologists Drs. Virginia L. Connor, Ed.D., P.C., and John R. Walker III, Psy.D. Doc. 16 at 22-23.

Dr. Lui examined Plaintiff on April 13, 2006. Tr. at 221-23. Dr. Lui noted that Plaintiff complained of very poor short term memory, difficulty following daily routines, and chronic headaches. *Id.* at 221. Dr. Lui found that Plaintiff had "residual cognitive dysfunction" and "diffuse brain damage." *Id.* at 222. Dr. Lui examined Plaintiff again on May 17, 2006, and noted that he "appear[ed] to be very frustrated and anxious[,]" "[wa]s stuttering with his speech[,]" and "ha[d] trouble with expressing ideas." *Id.* at 219. Dr. Lui recommended a neuropsychological evaluation and a reassessment of medications. *Id.* at 219-20. The ALJ noted that the electroencephalogram ("EEG") and MRI that Dr. Lui had ordered between these examinations came back within normal limits, but did not otherwise cite to or comment on Dr. Lui's findings. *Id.* at 30.

1    Dr. Feltner evaluated Plaintiff on March 16, 2006. *Id.* at 224-25. He reported that Plaintiff "continues to have significant fatigue, trouble getting awake, trouble functioning during the day as well as he would like." *Id.* at 224. He recommended a neurology consultation and further guidance on appropriate medications. *Id.* at 225. The ALJ noted, in an apparent reference to Dr. Feltner's report, that Plaintiff had fatigue and "probable cognitive dysfunction and depression" but "no seizures." *Id.* at 30.

Neuropsychologist Virginia L. Connor examined Plaintiff on October 17 and 18, 2007, at which time she administered a number of clinical tests and made a number of findings, including that Plaintiff had "cognitive disorder" and "adjustment disorder with mixed anxiety and depressed mood – chronic." Tr. at 284-88; 287. The ALJ, in an apparent reiteration of Dr. Connor's five-page report, stated the following:

> A neurological evaluation revealed the claimant performed in the superior range of intelligence. A loss of function was observable in the frontal lobe executive function, cognitive flexibility, problem solving and focused attention. There was lowered processing speed. Current testing did not show elevations on scales of depression or anxiety. There were some difficulties with intermittent depression. He was easily offended. His performance showed a mild impairment in sustained focused attention, working memory, divided attention and speed of processing. Fine motor coordination was impaired. The diagnoses were a cognitive disorder, NOS and an adjustment disorder with depressed mood and anxiety. There was a general assessment of functioning (GAF) of 65.

Tr. at 30.

Neuropsychologist John R. Walker examined Plaintiff on February 25, 2008. Tr. at 246-48; repeated at 264-66. Dr. Walker incorporated Dr. Connor's findings and diagnoses and conducted his own supplemental tests. *Id.* Dr. Walker noted that these tests "suggest[ed] that Mr. Silver may have a tendency to become moody and unpredictable, particularly under stressful situations. . . . he may be easily offended, and complain of being misunderstood and unappreciated." *Id.* at 247. Further, "he may show a tendency to complain and be pessimistic as a result of frequent bodily discomfort and somatic complaints." *Id.* In addition to Dr. Connor's diagnoses, Dr. Walker included "Fibromyalgia with Chronic Pain, Migraines." *Id.* Dr. Walker opined that Plaintiff would need "to address a number of issues prior to attempting to resume full time

1  compensated employment" and recommended that he see a neuropsychologist "to address
2  depression, anxiety, and adjustment to disability." *Id.* at 248. The ALJ did not separately
3  cite to or address Dr. Walker's findings.

4  The ALJ stated that he accepted the state agency mental evaluation because it was
5  supported by the medical evidence. *Id.* at 31. This evaluation listed Plaintiff's
6  impairments as "cognitive disorder" and "adjustment disorder with depressed mood and
7  anxiety[,]" and it rated these conditions as "not severe." *Id.* at 301; 302; 304. It also
8  listed Plaintiff's restrictions of daily living and difficulties maintaining social functioning
9  as "mild" and his difficulties in maintaining concentration, persistence, or pace as
10 "moderate." Tr. at 311. Because the ALJ did not specifically comment on or provide
11 any substantive analysis of the above-cited examining physicians' opinions, it is difficult
12 to tell what weight he gave to them or the extent to which he found them consistent with
13 the above-referenced evaluation. The ALJ did note that Plaintiff's GAF score of 65 and
14 IQ score or 130 were in "the average range of ability." *Id.* at 31.[4] These findings
15 correlate to the findings made by Dr. Connor and incorporated by Dr. Walker. The ALJ
16 also noted that Plaintiff had "some difficulties in focused attention[,]" "mild deficits in
17 cognitive ability and simple motor speed[,]" and "average to high average scores in
18 comprehension[,]" findings also consistent with – and apparently derived from – Dr.
19 Connor's and Dr. Walker's reports. *Id.*

20 Plaintiff argues that the ALJ discredited pertinent evidence, such as that Plaintiff
21 stuttered, had difficulty expressing ideas, had difficulty concentrating and "cognitive
22 slowness" (Doc. 16 at 22), but these findings are not clearly inconsistent with an RFC
23 assessment of mild difficulties performing daily activities and engaging in social
24 interaction and moderate difficulties maintaining concentration, persistence, or pace. The

---

[4] The GAF scale ranges from 1 to 100 and reflects a person's overall psychological, social, and occupational functioning. *See Morgan*, 169 F.3d at 598 n.1; *Vargas v. Lambert*, 159 F.3d 1161, 1164 n.2 (9th Cir. 1998). A GAF score of 41 to 50 indicates severe symptoms or severe difficulty in functioning and a GAF score of 51 to 60 indicates moderate symptoms or moderate difficulty in functioning. *See id.*

fact that Dr. Feltner wrote a letter to the technical university where Plaintiff enrolled to explain that he would need such accommodations as audio-visual recordings of lectures and extended time and quiet to take tests due to his post-encephalitis memory and concentration deficits also does not, as Plaintiff argues, clearly conflict with the mild to moderate limitations the ALJ found in this case. *See* Doc. 16 at 22; Tr. at 291.

Neither does the fact that Dr. Walker opined that Plaintiff was not ready to pursue full time employment show that the ALJ rejected Dr. Walker's opinion. Dr. Walker did not find Plaintiff's assessed limitations insurmountable. He opined that if Plaintiff went back to his treating physician to review his medications and address issues of pain, he could revisit the option of returning to work, though as an employee, not as a manager of his own business – a prospect with which, Dr. Walker noted, Plaintiff agreed. Tr. at 248. Additionally, the Commissioner, not the treating physician, makes findings of disability. 20 C.F.R. § 404.1527(d)(1). Thus, the ALJ was not required to accept the opinion of an examining doctor about whether Plaintiff would be able to perform full time work. *Id.* at § 404.1527(d)(3) ("We will not give any special significance to the source of an opinion on issues reserved to the Commissioner"). Finally, the ALJ found that the record was sufficient to show that Plaintiff suffered from viral encephalitis, fibromyalgia, headaches, an adjustment disorder with depressed mood, and a cognitive disorder – the same conditions Dr. Walker and the other examining physicians diagnosed – and that these conditions could reasonably produce the symptoms Plaintiff alleged. In sum, Plaintiff has not shown that the ALJ rejected any substantive findings of the examining physicians that would require him to give specific legitimate reasons for doing so.

Plaintiff argues that the ALJ improperly discounted the opinion of nurse practitioner Sally Lemberg, LCSW. Doc. 16 at 22-23. As noted by the ALJ, Ms. Lemberg opined on August 5, 2010 that Plaintiff had "moderately severe limitations in restriction of daily activities, responding to supervisors, work pressures and moderate limitations in performing repetitive tasks." Tr. at 33; *see id.* at 587-88. Ms. Lemberg also noted Plaintiff's pain from headaches that "take him down totally." *Id.* at 588. She

opined that Plaintiff would not be able to work consistently because "he goes down for several days" and "he cannot tolerate others." *Id.* The ALJ stated that these conclusions "were not supported by the mental health record" and were therefore given "little weight." Tr. at 33. He also noted that Ms. Lemberg was not a psychologist or psychiatrist. *Id.*

Nurse Practitioners are not an "acceptable medical source" for documenting a medical impairment under 20 C.F.R. § 404.1513(a). They are, however, considered "other sources" that the Commissioner may use to show the severity of a claimant's impairments and how these impairments may affect his ability to work. 20 C.F.R. § 404.1513(d). "The ALJ may discount testimony from these 'other sources' if the ALJ gives reasons germane to each witness for doing so." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) (internal quotation marks and citations omitted).

The ALJ's statement that Ms. Lemberg was not a psychologist or psychiatrist merely affirms that her testimony is not entitled to the weight accorded an "acceptable medical source." It is not itself a reason for discrediting Ms. Lemberg's ability to comment on the severity of Plaintiff's impairments. Inconsistencies with Plaintiff's mental health record would be a reason for discounting Ms. Lemberg's opinion, but the ALJ provided no guidance beyond simply pointing to "the mental health record" as to why he found Ms. Lemberg's opinions unsupported. As previously discussed, the opinions of Plaintiff's examining physicians are not clearly at odds with a finding of mild to moderate mental impairments, but this does not mean that Ms. Lemberg's findings of moderate to moderately severe impairments are wholly unsupported. Moreover, the ALJ does not address Ms. Lemberg's opinion regarding Plaintiff's incapacitation from headaches. In short, the ALJ failed to provide germane reasons for discounting the opinion of Ms. Lemberg.

**IV.     Remedy.**

The decision to remand for further development of the record or for an award benefits is within the discretion of the Court. 42 U.S.C. § 405(g); *see Harman v. Apfel*,

211 F.3d 1172, 1173-74 (9th Cir. 2000). This Circuit has held, however, that an action should be remanded for an award of benefits where three conditions are met: the ALJ has failed to provide legally sufficient reasons for rejecting evidence, no outstanding issue remains that must be resolved before a determination of disability can be made, and it is clear from the record that the ALJ would be required to find the claimant disabled were the rejected evidence credited as true.

The Court has found that the ALJ failed to give legally-sufficient reasons for not crediting Plaintiff's subjective testimony, the third-party testimony of Plaintiff's mother, and the "other source" testimony of nurse practitioner Sally Lemberg. As a result, under Ninth Circuit law, this evidence must be credited as true. *See Varney v. Secretary of Health and Human Services*, 859 F.2d 1396 (9th Cir. 1988) ("if grounds for [discrediting a claimant's testimony] exist, it is both reasonable and desirable to require the ALJ to articulate them in the original decision."); *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995) ("Where the Commissioner fails to provide adequate reasons for rejecting the opinion of a treating or examining physician, we credit that opinion 'as a matter of law.' " (citing *Hammock v. Bowen,* 879 F.2d 498, 502 (9th Cir.1989); *Harman v. Apfel,* 211 F.3d 1172, 1178 (9th Cir.2000) (same); *Benecke v. Barnhart,* 379 F.3d 587 (9th Cir.2007); ( "Because the ALJ failed to provide legally sufficient reasons for rejecting Benecke's testimony and her treating physicians' opinions, we credit the evidence as true.").

When vocational expert Mark Kelman was asked to consider Plaintiff's testimony about his headaches and his memory and concentration deficits, he opined that Plaintiff could not do his past relevant work or "any other work." Tr. at 60, 61. Similarly, when presented with a hypothetical involving an individual with the limitations noted in Ms. Lemberg's report, including moderate to moderately severe limitations in ability to understand, carry out, and remember instructions, moderately severe limitations in ability to respond appropriately to supervision, moderate limitations in ability to respond appropriately to coworkers, and moderately severe limitations in ability to respond to customary work pressures, the vocational expert opined that such an individual would not

be able to do any work. *Id.* at 62. The vocational expert also opined that someone who had to miss work three or more days a month or was unable to complete tasks in a timely manner three or more days a month would not be able to sustain regular work. *Id.* Based on these findings, it is clear that, credited as true, Plaintiff's own testimony, the report of Ms. Lemberg about his limitations, and the testimony of Plaintiff's mother regarding his avoidance of social interaction and his propensity for headaches and "bad brain days" would compel a finding of disability. Because there are no outstanding issues to be resolved, the Court will vacate the Commission's negative disability determination and remand for an award of benefits.

**IT IS ORDERED:**

1. Defendant's decision denying benefits is **reversed**.
2. The case is **remanded** for an award of benefits.

Dated this 28th day of February, 2013.

_____
David G. Campbell
United States District Judge